IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK C. RUBEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 2441 |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | Judge Ronald A. Guzmán |
| GENERAL OF THE UNITED STATES, and | ) | |
| ERIC CHAVEZ, KELVIN MACK, LORETTA | ) | |
| WILKINS and JEANETTE DRANE LAKE, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Mark C. Ruben, a mail carrier employed by the U.S. Postal Service, has sued the U.S. Postmaster General John Potter and four Postal Service managers, Eric Chavez, Kelvin Mack,[1] Loretta Wilkins and Jeanette Drane Lake, for disability discrimination and retaliation pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq.*,[2] violation of his right to petition Congress as provided under 5 U.S.C. § 7211, and violation of his First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983. Defendants move to

---

[1] Plaintiff incorrectly identifies defendant Kelvin Mack as "Calvin" Mack.

[2] Plaintiff purports to sue for disability discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. However, because individuals with disabilities are not a protected class under Title VII, Ruben's claim is more properly brought under the Rehabilitation Act, 29 U.S.C. § 794(d), which incorporates the pertinent provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. In addition, his retaliation claim falls under the Rehabilitation Act because 29 U.S.C. § 794(d) expressly incorporates the anti-retaliation provision of the ADA, 42 U.S.C. § 12203.

dismiss Counts I and II as to defendants Chavez, Mack, Wilkins and Drane Lake and Counts III and IV as to all defendants. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion. Only Counts I and II against the Postmaster General remain.

### **Facts**

Ruben, a letter carrier employed by the U.S. Postal Service since 1984, suffered an injury from a fall in his home in June 2003. (Am. Compl. ¶ 4.) Ruben remained off work through September 2003. (*Id.* ¶¶ 8, 9.) Ruben's physician wrote notes releasing him to return to work with certain restrictions on or about September 15, November 17, and December 8, 2003. (*Id.* ¶ 10.) Ruben claims postal managers refused to let him return to work until he was fully recovered and he expended over six months of accrued sick leave. (*Id.* ¶¶ 11-13.) The Postal Service offered Ruben a light-duty assignment at another station, and he declined. (*Id.* ¶¶ 16-17.)

Ruben claims to have objected to not being allowed to work by writing a letter and attempting to file it as a grievance. (*Id.* ¶ 17.) Ruben alleges that he communicated with Congresswoman Janice Schakowsky about the situation, and the Congresswoman wrote a letter to then-Postmaster General, Eric Chavez. (*Id.* ¶ 15.) Ruben provided the Postal Service with a doctor's note stating he was cleared to return to full-duty work as of March 18, 2004, but he waited a few days to return because his father was undergoing surgery on March 22. (*Id.* ¶ 18.)

On March 25, 2004, the Postal Service issued an "Official Five-Day Notice" for Ruben to return to work. (*Id.* ¶ 19.) Ruben claims he was admonished and threatened by Loretta Wilkins not to speak to Congresswoman Schakowsky. (*Id.* ¶ 20.) He also claims Wilkins handed him a

letter addressed to him that was already opened containing a $500.00 award from the postal service as a result of comments from customers on his route. (*Id.* ¶ 22.) The Postmaster's letter referenced receipt of Congresswoman Schakowsky's letter which commended Ruben for good work. (*Id.* ¶ 24.)

On May 10, 2004, Ruben contacted the EEO office to complain of disability discrimination and retaliation. (*Id.* ¶ 25.) He complained about being denied light-duty work, receiving the Five-Day Notice, being threatened not to contact his Congresswoman and the opening of his letter by someone in Postal Service management. (*Id.*)

Upon returning to work, Ruben alleges Drane Lake retaliated against him by denying him overtime and accusing him of insubordination. (*Id.* ¶ 33.) Ruben alleges that a postal liaison was appointed to receive complaints from postal patrons in lieu of complaining to Congresswoman Schakowsky's office. (*Id.* ¶ 34.) Ruben claims he was told by postal managers to discourage his route customers from calling Congresswoman Schakowsky. (*Id.* ¶ 37.)

In Count I, Ruben alleges he suffered disability discrimination in being denied a light-duty assignment until he was released for full duty. In Count II, he alleges he suffered ongoing retaliation for opposing his disability discrimination. In Count III, Ruben alleges that his statutory right to petition Congress as a federal employee arising from 5 U.S.C. § 7211 was violated. In Count IV, he alleges he was deprived of his right to free speech as guaranteed by the First Amendment.

## Discussion

On a motion to dismiss, the court takes all of the well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). A complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Defendants move to dismiss Counts I and II as to the individually named defendants sued in their individual and official capacities. Defendants also move to dismiss Counts III and IV in their entirety.

## I. Counts I and II

Defendants argue that individually and officially named defendants must be dismissed from Count I and II as improperly named. Ruben concedes that the individual defendants are not liable as to Counts I and II because the only proper defendant in an employment discrimination action against the federal government is the head of the agency. *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984) (stating Postmaster General is the only proper defendant in a Rehabilitation Act suit against the U.S. Postal Service). Postal employees Eric

Chavez, Kelvin Mack, Loretta Wilkins and Jeanette Drane Lake are hereby dismissed as defendants with regard to Counts I and II.

## II. Counts III and IV

In Count III, Ruben sues defendants pursuant to 5 U.S.C. § 7211 for violating his right to petition Congress. In Count IV, Ruben sues defendants for depriving him of his rights guaranteed under the First Amendment. Defendants move to dismiss Counts III and IV as to all defendants. Because the Court finds that Ruben fails to state a claim in either count, it grants defendants' motion.

Federal employees have two avenues by which to seek relief for claims against their employers: a suit against the employer under the employment discrimination statutes and, for non-discrimination claims, an administrative claim under the CSRA. *See* 5 U.S.C. §§ 2301 *et seq.*; 39 U.S.C. §§ 1001-11, 1201-09; *see also* 39 U.S.C. § 1005(a)(1) (providing that the CSRA is applicable to postal workers). Under the CSRA, the Merit Systems Protection Board ("MSPB") provides administrative resolution of disputes over adverse personnel actions. *United States v. Fausto*, 484 U.S. 439, 449 (1988); *Ayrault v. Pena*, 60 F.3d 346, 348 (7th Cir. 1995). It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 45 (D.D.C. 2005) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).

Ruben apparently concedes that he has not exhausted his administrative remedies with

5

regard to Count III, which is a jurisdictional flaw. He opines that his claim pursuant to 5 U.S.C. § 7211 is separate and distinct from the CSRA's framework in regard to adverse personnel actions. Unfortunately for Ruben, it is clear that 5 U.S.C. § 7211 does not provide a private right of action. *Nixon v. Fitzgerald*, 457 U.S. 731, 741 n.20 (1982); *Harlow v. Fitzgerald*, 457 U.S. 800, 806 n.10 (1982). Moreover, Ruben's allegations clearly show that this claim hinges on an adverse personnel action because he states that defendants retaliated against him for his having petitioned Congresswoman Schakowsky by denying him overtime and accusing him of insubordination. (Am. Compl. ¶¶ 32-33.) Thus, the Court grants defendants' motion to dismiss Count III for failure to exhaust administrative remedies.

In Count IV, Ruben claims that defendants violated his First Amendment rights. Defendants correctly presume that such a claim may only be brought against Eric Chavez, Kelvin Mack, Loretta Wilkins and Jeanette Drane Lake sued in their individual capacities pursuant to *Bivens v. Six Unknown Agents of the Bureau of Narcotics*, 403 U.S. 388, 389 (1971).[3] Under *Bivens*, a plaintiff may bring a cause of action for damages against federal agents in their individual capacity acting under color of federal authority for unconstitutional conduct. *Id.* at 389. Defendants also correctly argue that Ruben is precluded from bringing a *Bivens* claim. A

---

[3]To the extent Ruben is alleging constitutional claims against any of the defendants in their official capacity, the Court lacks subject matter jurisdiction. A suit against a federal agent in his official capacity is, in essence, a suit against the federal government. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The federal government has not waived its sovereign immunity for constitutional tort claims. *Bivens*, 403 U.S. at 410 (Harlan, J., concurring) ("However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit."). Thus, any claim against the individually named defendants sued in their official capacity, or any claim against the Postmaster General of the U.S. Postal Service for that matter, must be dismissed for lack of jurisdiction.

federal employee's *Bivens* action is not viable if the "employee had available a congressionally created administrative remedy." *Robbins v. Bentsen*, 41 F.3d 1195, 1202-03 (7th Cir. 1994).

Ruben argues that he had no administrative remedy because he is categorized as a nonpreference-eligible employee in excepted service and the CSRA does not provide him with administrative or judicial review of adverse personnel actions. Unfortunately for Ruben, there is binding authority stating otherwise.

"*United States v. Fausto* . . . holds that by creating a comprehensive review system the CSRA implicitly repealed the jurisdiction of federal district courts over personnel actions of a type appealable to the MSPB, even when the action is against a member of the excepted service who has no right to MSPB review." *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996) (citing *Fausto*, 484 U.S. at 449). Thus, the "CSRA provides the exclusive remedy for an alleged constitutional violation (including an alleged First Amendment violation) arising out of federal employment." *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006); *see Bush v. Lucas*, 462 U.S. 367, 386 (1983) (stating that First Amendment challenges to agency action have been recognized within the CSRA framework). The end result is that "[m]any personnel actions are unreviewable in any court or administrative tribunal." *Paige*, 91 F.3d at 43. To hold otherwise "would invert the CSRA's system of preferences for certain employees, making competitive service and preference-eligible employees worse off than others." *Id.*

In sum, Congress' creation of the CSRA precludes the Court's consideration of Count IV. The Seventh Circuit has instructed that, in situations such as this, the appropriate basis for dismissal is failure to state a claim upon which relief can be granted. *See Richards*, 461 F.3d at

886. Accordingly, the Court grants defendants' motion to dismiss Count IV for failure to state a claim.[4]

### III. Punitive Damages

Defendants move to strike Ruben's claim for punitive damages. Punitive damages are not recoverable in private suits brought under the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Accordingly, the Court strikes any request for punitive damages from the amended complaint.

### Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss Counts I and II as to defendants Eric Chavez, Kelvin Mack, Loretta Wilkins and Jeanette Drane Lake and Counts III and IV in their entirety. Only Counts I and II remain against the Postmaster General of the United States.

**SO ORDERED.**          ENTERED: 9/28/07

**RONALD A. GUZMAN**
**United States District Judge**

---

[4]Because the Court has dismissed Counts III and IV on other grounds, the Court need not reach defendants' arguments that those counts are barred by the statute of limitations and qualified immunity.